786 F.2d 1165
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LOUISVILLE AND NASHVILLE RAILROAD COMPANY, Plaintiff
v.
PULLMAN, INC., ET AL., Defendants,
SCULLIN STEEL COMPANY AND DIVERSIFIED INDUSTRIES, INC.,
Defendants-Appellees,
UNIVERSAL MARION CORPORATION, Defendant-Appellant.
 84-5588
 United States Court of Appeals, Sixth Circuit.
 2/25/86
 
 W.D.Ky.
 AFFIRMED
 On Appeal from the United States District Court for the Western District of Kentucky
 BEFORE: KEITH and GUY, Circuit Judges and TAYLOR*, District Judge.
 PER CURIAM:
 
 
 1
 Appellant Universal Marion Corporation ('Universal') appeals from a district court interlocutory order granting summary judgment in favor of appellees Scullin Steel Company and Diversified Industries, Inc. ('Diversified') in this tort action involving indemnity and contribution. For the reasons set forth below, we affirm the decision of the district court.
 
 I.
 
 2
 In January 1960, appellant Universal, operating through its Scullin Steel Company Division, manufactured a particular side frame used as a component of a railcar that transfers the load of the car body onto the axles and wheels. On January 16, 1968, Universal and Diversified entered into an agreement for the purchase of Scullin which was completed on March 27, 1968. The contract between Universal and Diversified contained the following provisions:
 
 
 3
 (c) Liabilities of Scullin Assumed by Diversified.
 
 
 4
 Diversified shall assume and pay or discharge all liabilities and obligations of Scullin, including all debts, contracts, liabilities, and obligations of Scullin of any kind, character or description, whether accrued, absolute, contingent or otherwise to the extent that they are reflected or reserved against on Scullin's audited balance sheet (provided for in paragraph (b) of Section 2 of this Agreement) as of the Transfer Date, or its books of account or records as of the Transfer Date, including all liabilities and obligations of Scullin as the same are reflected or referred to by the subject matter of subparagraphs (i), (ii), (iii) and (iv) of paragraph (c) of Section 3 of this Agreement as of the Transfer Date. However, Diversified shall not assume and shall not pay or discharge any liability or obligation of Scullin or Company[1] or any of its subsidiaries to any broker or finder employed by Company or Scullin for any brokers' or finders' fees, or for costs, expense or income, sales, property or other tax liability of Scullin or Company or any of its subsidiaries arising from, growing out of or relating to the sale and exchange provided for by this Agreement, or any income tax liability of Scullin or tax measured by income, and any such liabilities of Scullin not assumed by Diversified shall not be credited as part payment of the purchase price despite any contrary provision in paragraph (b) of this Section 1, and any such liability or obligation shall be the liability and obligation of the Company or its subsidiaries.
 
 
 5
 Section 3(c)(iv) mentioned in the quoted except above provides:
 
 
 6
 Section 3. Representations and Warranties of Company.
 
 
 7
 Company represents, warrants and agrees as follows:
 
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 (c) Undisclosed Liabilities.
 
 
 11
 Scullin has no debts, contracts, liabilities or obligations of any kind, character or description, whether accrued, absolute, contingent or otherwise, or due or to become due, and the Company and its subsidiaries have no debts, contracts, liabilities or obligations of any kind, character or description which have been, are threatened to, or may be asserted against Scullin, whether accrued, absolute, contingent or otherwise or due or to become due, except:
 
 
 12
 * * *
 
 
 13
 * * *
 
 
 14
 (iv) those incurred arising out of or relating to product warranties in the ordinary course of Scullin's normal and regular business consistent with past practices.
 
 
 15
 The contract was prepared and executed in St. Louis and provided that it is to be interpreted in light of Missouri law. At the time the contract was executed, Missouri had not adopted Section 402A, Restatement of Torts (2d). In 1969, the Missouri court adopted Section 402A.
 
 
 16
 On December 6, 1977, a Louisville & Nashville Railroad freight train derailed near Shepherdsville, Kentucky. The derailment sent a part of the train into the Publishers Printing Company, Inc. plant. Publishers Printing instituted an action in the Bullitt Circuit Court against Louisville & Nashville seeking damages. Prior to trial, but after the commencement of this action, Louisville & Nashville negotiated a settlement with Publishers which paid approximately three million dollars.
 
 
 17
 Louisville & Nashville commenced this action in the Western District of Kentucky, naming defendants Scullin Steel Company (a division of Diversified), Pullman, Inc. and Consolidated Rail Corporation ('Conrail'). Louisville & Nashville alleged that Scullin manufactured a side frame, that Pullman manufactured the hopper car on which the side frame was installed and that Conrail owned the hopper car. It was also alleged that the side frame was defective and that the defect caused the derailment.
 
 
 18
 In addition to seeking damages which it suffered directly by reason of the derailment, Louisville & Nashville sought contribution or indemnity from the named defendants for the settlement it reached with Publishers Printing. The settlement agreement between Publishers Printing and Louisville & Nashville reserved whatever claims Publishers Printing had against Scullin, Pullman and Conrail. These claims were assigned to Louisville & Nashville as a part of the settlement agreement.
 
 
 19
 By an amended complaint, Louisville & Nashville named Universal Marion as a defendant, alleging that at the time the side frame was manufactured Scullin was a wholly owned subsidiary of Universal Marion. Scullin and Diversified filed cross-claims for indemnity and contribution against Universal and Universal filed a similar cross-claim against Diversified. The district court granted Diversified's motion for summary judgment and denied Universal's similar cross-claim against Diversified. The district court held that under Missouri law, Diversified as a successor corporation, did no more than purchase the assets of Universal's Scullin Steel Company Division and, therefore, is not responsible for Louisville & Nashville's liabilities.
 
 II.
 
 20
 On appeal, Universal argues that as an exception to the general rule of non-liability, Diversified expressly or impliedly agreed, under the terms of the asset purchase agreement, to assume the negligence and strict liability claims asserted by Louisville and Nashville. Universal's argument that Diversified impliedly assumed Louisville & Nashville's claim for negligence and strict liability is without merit. The agreement specifically limited liability to express provisions. Section 1(d) of the agreement states:
 
 
 21
 (d) No Assumption of Other Liabilities of Company by Diversified. Diversified shall neither assume nor pay nor discharge any debts, contracts, liabilities or obligations of [Universal] or any of its subsidiaries or Scullin, of any kind or description, whether accrued, absolute, contingent or otherwise, except to the extent expressly provided for in this Agreement. [Emphasis added].
 
 
 22
 Furthermore, it is also clear from Section 1(c) that Diversified agreed to assume liabilities only:
 
 
 23
 to the extent that they are reflected or reserved against on Scullin's audited balance sheet (provided for in paragraph (b) of Section 2 of this Agreement) as of the Transfer date, including all liabilities and obligations of Scullin as the same are reflected or referred to by the subject matter or subparagraphs (i), (ii), (iii) and (iv) of paragraph (c) of Section 3 of this Agreement as of the Transfer Date.
 
 
 24
 Since Universal has not demonstrated under any reasonable reading of the agreement that Diversified impliedly assumed liability for Louisville and Nashville's claims, we turn our analysis to Diversified's alleged express liability.
 
 
 25
 On the issue of express liability, we believe that the district court was correct in holding that the Missouri rule is best articulated in Tucker v. Paxson Machine Co., 645 F.2d 620 (8th Cir. 1981). In Tucker, the court held that a corporation purchasing the assets of another corporation does not thereby assume the liabilities of the transferor. Tucker, 645 F.2d at 622. As an exception to the above rule, the purchasing corporation may agree to assume the liabilities of the transferor. Tucker, supra, 645 F.2d at 622. Universal argues that Diversified assumed liability in the asset purchase agreement for the negligence and strict liability claims asserted by Louisville & Nashville by virtue of the language of Section 3(c)(iv). That section when read in conjunction with Section 1(c), states that 'liabilities or obligations . . . relating to product warranties in the ordinary course of Scullin's normal and regular business consistent with past practices,' were assumed by Diversified.
 
 
 26
 We find that Diversified did not expressly assume liability for Louisville & Nashville's claims. Universal reaches its conclusion that Louisville and Nashville's negligence and strict liability claims fit within the scope of 3(c)(iv) by ignoring virtually all of the pertinent language of that section and by referring solely to the phrase 'relating to product warranties'. Universal argues that because the word 'warranty' is mentioned in Section 3(c)(iv), Diversified assumed liability for negligence and strict liability claims because the law of Missouri in 1968 was such that this claim would have been a claim for breach of warranty of fitness of the products. However, it is clear that if all of the language in Section 3(c)(iv) is examined, there can be no question that Scullin did not, by virtue of Section 3(c)(iv), assume liability for the negligence and strict liability claims asserted by Louisville & Nashville. The phrase 'product warranties' is not simply used in the abstract in Section 3(c)(iv) as Universal seems to suggest. Rather, Section 3(c)(iv) uses the phrase 'product warranties' in the very specific context of product warranties 'in the ordinary course of Scullin's normal and regular business consistent with past practices'.[2] Consequently, we believe the district court was correct in holding 'that the language of the contract, considered in light of the holding in Tucker compels the conclusion that this was no more than a sale of assets by [Universal] to [Diversified].'
 
 
 27
 Accordingly, we affirm the decision of the district court granting summary judgment for Diversified.
 
 
 
 *
 Honorable Anna Diggs-Taylor, District Judge, U.S. District Court for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 'Company' refers to Universal
 
 
 [2]
 The phrase 'product warranties in the ordinary course of Scullin's normal and regular business consistent with past practices' connotes a routine contractual warranty practice established by a past course of dealing between Scullin and its customers. The 'ordinary course of Scullin's normal and regular business' and its 'past practices' regarding product warranty claims were expressly incorporated by reference in Section 3(c)(iv), and whether in written or unwritten form the district court properly considered them in construing Section 3(c)(iv). See Modine Manufacturing Company v. Carlock, 510 S.W. 2d 462, 467-68 (Mo. 1974). Thus, the district court, contrary to appellant's assertion, was under no obligation to make an express finding that the asset purchase agreement was ambiguous before it considered evidence of Diversified's express assumption of liability