No. 95-1602

Diana K. Sherlock,                    *
                                      *
         Plaintiff - Appellee,        *
                                      *  Appeal from the United States
v.                                    *  District Court for the Western
                                      *  District of Missouri.
Quality Control Equipment             *
Company, Inc.,                        *
                                      *
         Defendant - Appellant.       *


Submitted:  November 15, 1995

Filed:  March 27, 1996


Before McMILLIAN, FLOYD R. GIBSON, and LOKEN, Circuit Judges.


FLOYD R. GIBSON, Circuit Judge.

In this diversity action, Quality Control Equipment Company ("Quality") appeals the district court's[1] entry of judgment awarding Diana Sherlock $133,801.86 in damages. Finding no error on the record before us, we affirm.

## I.    BACKGROUND

We consider here another case of human mutilation caused by a chitterling cleaning machine located in a St. Joseph, Missouri meat packing plant owned by Swift Independent Packing Company, which is

---

[1]The HONORABLE HOWARD F. SACHS, Senior United States District Judge for the Western District of Missouri.

now known as Monfort Pork.[2]  See Crossfield v. Quality Control Equip. Co., 1 F.3d 701 (8th Cir. 1993).  Because the factual recitation in Crossfield provides a detailed overview of circumstances relevant to this appeal, we will abbreviate our discussion of certain events underlying Sherlock's cause of action.  See id. at 702-03 (describing the chitterling cleaning machine and the chitterling production process).

In 1983, Quality purchased from Strickler-DeMoss Manufacturing, Inc. ("Strickler") the patent rights for chitterling cleaning machines that, until that time, Strickler had assembled.  As part of the exchange, Quality also acquired certain inventory, such as patterns and jigs, that Strickler had used to service and manufacture the machines.  Quality obtained the patents so that it could manufacture, sell, and supply machines and replacement parts to meat processing plants.  Shortly after the transaction, Strickler ceased to exist as a corporate entity.

For approximately two years, Quality built chitterling cleaning machines identical in design to those manufactured by Strickler.  In 1985, though, Quality became concerned about potential problems in the machines constructed pursuant to that original design ("old style" machines). Specifically, Quality feared that the equipment might ensnare an operator's hand or glove and pull the person's body into the device's cutting blades. Consequently, to reduce the risk of entanglement, Quality added safety features to the design of its chitterling cleaning machine.  These design changes included extending the length of a shield over the chain and pipes at the machine's intake end, adding kill switches to automatically stop the machine if the shield were raised, and straightening the machine's feeder tubes.

---

[2]For ease of identification, we will throughout this opinion refer to the corporation as Monfort.

Monfort possessed an old style chitterling cleaning machine that it had bought from Strickler sometime prior to 1978. In 1984, Monfort submitted to Quality the first of many orders for replacement parts. In fact, between March 1984 and June 1988, Quality provided parts to Monfort's St. Joseph plant on twenty-four separate occasions. On the basis of invoices, Quality was aware that Monfort utilized an old style machine; still, no Quality employee had ever visited Monfort's plant in St. Joseph. Importantly, Quality did not notify Monfort about the safety hazards associated with the use of the cleaning apparatus. On June 14, 1988, while working at Monfort's St. Joseph facility, Sherlock had a large portion of her right hand severed when the old style machine entangled her appendage and pulled it into the cutting blade inside the mechanism.

Sherlock subsequently initiated this diversity negligence action, based on Missouri law, against Quality. After the district judge instructed the jury that Quality, if found to be a "functional successor" of Strickler, could under some circumstances be liable for negligent failure to warn, the venire returned a verdict in Sherlock's favor. The district judge thereafter denied Quality's motion for a new trial and renewed motion for judgment as a matter of law, and Quality timely filed an appeal to this court. In its appeal, Quality advances what we construe to be essentially two allegations of error. First, Quality claims that the district court in its jury instructions improperly confused the legal theories relevant to this case. Also, Quality contends that there was insufficient evidence to support the jury's verdict.

## II.   DISCUSSION

### A.   The Jury Instructions

Sherlock's theory of recovery was based exclusively on a successor corporation's independent duty to warn of defects in the

3

predecessor's products.[3]  Quality maintains that the district court, through its jury instructions, impermissibly interjected into the case elements of Missouri's law governing a successor corporation's liability for its predecessor's torts.  We review a district court's formulation of jury instructions for an abuse of discretion and will not reverse if the instructions, taken as a whole, fairly and adequately submitted the issues in the case to the jury.  Transport Ins. Co. v. Chrysler Corp., 71 F.3d 720, 723 (8th Cir. 1995).

This court is by now intimately acquainted with the theory of corporate successor liability as applied in Missouri, having had numerous opportunities to review this body of law.  We previously summarized the state's "well-settled" rule in this area as follows:

> Where one corporation sells or otherwise transfers all of its assets to another corporation, the latter is not liable for the debts and liabilities of the transferor, except:  (1) where the purchaser expressly or impliedly agrees to assume such debts; (2) where the transaction amounts to a consolidation or merger of the corporation; (3) where the purchasing corporation is merely a continuation of the selling corporation; or (4) where the transaction is entered into fraudulently in order to escape liability for such debts.

Wallace v. Dorsey Trailers Southeast, Inc., 849 F.2d 341, 343 (8th Cir. 1988)(emphasis omitted)(quoting Brockmann v. O'Neill, 565 S.W.2d 796, 798 (Mo. Ct. App. 1978)).  Because Missouri's intermediate appellate courts have thus far been unwilling to adopt more "modern" and expansive interpretations of the four rather narrow traditional exceptions, it is typically somewhat difficult for a Missouri plaintiff to hold a successor corporation

---

[3]This case is thus fundamentally different from Crossfield, in which the plaintiff sought to attach liability because of Quality's status as a supplier of a component part.  See Crossfield, 1 F.3d at 706 ("The only theory under which Crossfield attempts to hold Quality liable is as a supplier of the component part, the chain.").

4

accountable for its predecessor's torts. See Chemical Design, Inc. v. American Standard, Inc., 847 S.W.2d 488, 492-93 (Mo. Ct. App. 1993)(refusing to depart from restrictive construction of traditional exceptions); Young v. Fulton Iron Works Co., 709 S.W.2d 927, 940-41 (Mo. Ct. App. 1986)(same).

Nonetheless, a successor corporation may also be liable for its own tortious failure to warn its predecessor's customers of a defect in the predecessor's product.[4] Unlike a cause of action alleging corporate successor liability, which necessarily focuses on the "nature of the transaction" between the corporate transferor and its transferee, Tucker v. Paxson Mach. Co., 645 F.2d 620, 622 (8th Cir. 1981), liability for an independent failure to warn depends upon the nature of the relationship between the successor and the predecessor's customers. Florum v. Elliott Mfg., 867 F.2d 570, 577 (10th Cir. 1989). "For the most part such a duty [to warn] has been imposed where the relation is of some actual or potential economic advantage to the defendant, and the expected benefit justifies the requirement of special obligations." Leannais v. Cincinnati, Inc., 565 F.2d 437, 442 (7th Cir. 1977)(quoting William L. Prosser, Law of Torts § 56, at 339 (4th ed. 1971)).

In determining the existence of a relationship sufficient to justify foisting a duty to warn of known dangers on the successor corporation, the courts have often cited four factors as being significant. See, e.g., Tucker, 645 F.2d at 626. These elements include: "(1) succession to a predecessor's service contracts; (2) coverage of the particular machine under the contract; (3) service of that machine by the purchaser-corporation; and (4) the purchaser-corporation's knowledge of defects and of the location or

---

[4]In Tucker v. Paxson Mach. Co., 645 F.2d 620, 626 (8th Cir. 1981), we implicitly acknowledged that Missouri would recognize a successor corporation's independent duty to warn.

owner of that machine."  Id.  While these factors are indisputably important, and in many cases dispositive, we remain mindful that they are merely useful tools which provide guidance in resolving the ultimate inquiry:  whether there is an adequate nexus between the successor and the predecessor's customers.  See Downtowner, Inc. v. Acrometal Prods., Inc., 347 N.W.2d 118, 125 (N.D. 1984)("This listing [of factors] cannot be said to be exhaustive.").  As explained in one of the foremost authorities on corporate law:

> The critical element required for the imposition of the duty is a continuing relationship between the successor and the predecessor's customers for the benefit of the successor. Hence, rather than relying only on the four specific factors above, which are not exhaustive in establishing a nexus between the successor and its predecessor's customers sufficient to justly impose an independent duty to warn upon notice of dangers or potential dangers, the courts also employ a risk/benefit analysis.  Thus, the focus in deciding whether the relationship between the successor corporation and the preexisting customer is sufficient to create a duty to warn has been upon the actual or potential economic advantage to the successor corporation.

15 William M. Fletcher, Fletcher Cyclopedia of the Law of Private Corporations § 7123.08 (perm. ed. rev. vol. 1990).

In the present case, we do not agree that the district court improperly included within its jury instructions elements relevant only to corporate successor liability.  In essence, Quality solely bases this allegation of error on the district court's use of the phrase "functional successor" in its charge.  While we acknowledge that this term appears to be unique in the jurisprudence applicable to a successor corporation's independent duty to warn, we cannot say that this novel choice of words, in itself, irreparably tainted the otherwise correct instructions.  To the contrary, our review of the instructions reveals that the district court properly advised the jury of the law.  Notably, instead of emphasizing the transaction between Quality and Strickler, the court directed the

jury to examine the relationship between Quality and Monfort. Moreover, the court correctly stated that Quality would have a "duty of care to give adequate warning" only if it knew of the dangerous condition[5] and "maintain[ed], on a regular basis, contact with purchasers of equipment from the original seller, through a service contract or comparable relationship." Given these facts, we conclude that the district court fairly and adequately submitted to the jury the issue of a successor corporation's independent duty to warn.

## B. Sufficiency of the Evidence

Quality maintains that, because there was insufficient evidence to support Sherlock's claim, the district court committed error when it refused to grant the company's renewed motion for judgment as a matter of law. When reviewing a district court's denial of a motion for judgment as a matter of law, we must:

---

[5]At oral argument, the parties stipulated that the district court's instruction did not require the jury to determine that Quality had actual knowledge of the defect. Though we agree that most courts considering this subject have required a successor corporation to have actual, as compared to constructive, knowledge of the defect, see, e.g., Polius v. Clark Equip. Co., 802 F.2d 75, 84 n.10 (3d Cir. 1986), it is not entirely clear that the Missouri Supreme Court would adopt this standard. Cf. Flaugher v. Cone Automatic Mach. Co., 507 N.E.2d 331, 337 (Ohio 1987)(stating that the successor corporation must have had actual or constructive knowledge of the defect). Even so, to the extent that the district court incorrectly defined this term for the jury, we find that error to be harmless because Quality admits that it became aware of the design defect in old style machines. It argues, however, that because Monfort could independently have assimilated safety features into the machine that injured Sherlock, it did not have the actual knowledge arguably necessary to impose liability. We disagree. Design defects, by their very nature, affect all machines constructed pursuant to the faulty design. It seems to us disingenuous for a manufacturer to claim that it did not have knowledge of a particular machine's defect because the owner of the machine might unilaterally have made safety alterations to the device.

> (1) resolve direct factual conflicts in favor of the nonmovant;
> (2) assume as true all facts supporting the nonmovant which the
> evidence tended to prove; (3) give the nonmovant the benefit of
> all reasonable inferences; and (4) affirm the denial of the
> motion if the evidence so viewed would allow reasonable jurors
> to differ as to the conclusions that could be drawn.

Grand Labs., Inc. v. Midcon Labs., 32 F.3d 1277, 1280 (8th Cir. 1994). Applying this standard to the record, we find that there was clearly sufficient evidence to support a jury's determination that Quality had an independent duty to warn Sherlock's employer of defects in the chitterling cleaning machine.

Relying on testimony from Quality's own officers and employees, the jury could reasonably have inferred that in 1983 Quality was probably the sole remaining manufacturer in the world of chitterling cleaning machines. Further, it appeared that Quality was by far the most easily accessible, if not the only, supplier of replacement parts for the Strickler chitterling cleaning machine. Indeed, this state of affairs contributed to Quality's decision to purchase the rights to assemble the machine, as Quality's president testified that an "attractive" feature of the transaction was the fact that Strickler was going out of business and Quality would thus be able to "step into [Strickler's] shoes" vis a vis the predecessor corporation's customers. Consequently, one could justifiably conclude that Quality perceived it to be economically advantageous to foster relationships with Strickler's customers; for, through these associations Quality would have the opportunity not only to peddle replacement parts, but to one day possibly benefit from the sale of new machines to a clientele with apparently no other viable source for a needed product. To be sure, Quality did benefit in the instant case, having sold replacement parts to Monfort on twenty-four separate occasions.

Under these circumstances, it would have been wholly

8

appropriate for the jury to deem the nexus between Quality and Monfort as adequate to justify imposing upon Quality a duty to warn of dangers connected with the chitterling cleaning machine. Significantly, Quality knew of the design defect present in the Strickler machines, it knew that Monfort utilized an old style machine, and it knew the location of the machine. Still, Quality did not take the relatively easy steps that would have sufficed to notify Monfort of the known danger. Because the facts and reasonable inferences adduced at trial would, at minimum, allow reasonable jurors to differ as to whether Quality acquired an independent duty to warn Monfort, we feel that the district court correctly refused to grant the renewed motion for judgment as a matter of law.

## III. CONCLUSION

The district court properly apprised the jury of the law applicable to a successor corporation's independent duty to warn, and there was sufficient evidence to support a verdict on this claim. We therefore affirm the district court's entry of judgment awarding Sherlock $133,801.86 in damages.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

9