**Toni RATLIFF, individually and on behalf of all others similarly situated, Plaintiff,**

v.

**MENTOR CORPORATION, Defendant.**

**Case No. 08–3198–CV–S–RED.**

United States District Court, W.D. Missouri, Southern Division.

Aug. 5, 2008.

Stephen F. Meyerkord, Steven D. Rineberg, Brian D. Kurth, Meyerkord, Rineberg & Graham, St. Louis, MO, for Plaintiff.

Dustin Rawlin, John Q. Lewis, Jones, Day, Reavis & Pogue, Cleveland, OH, Michael J. Patton, Scott E. Bellm, Turner, Reid, Duncan, Loomer & Patton, Springfield, MO, for Defendant.

## ORDER

RICHARD E. DORR, District Judge.

Now before the Court is Defendant Mentor Corporation's ("Mentor") Motion to Dismiss (# 6). After careful consideration, the Court **GRANTS** the motion.

## BACKGROUND

Toni Ratliff suffered from urinary stress incontinence. Ms. Ratliff agreed to have a Mentor UBTape sling surgically implanted in her pelvis area to treat the condition. The UBTape allegedly causes "vaginal mesh extrusions, infections and abscesses, often requiring prolonged periods of suffering and then secondary surgical procedures to correct the problem." *Petition* ¶ 10.

Ms. Ratliff filed a lawsuit against Defendant Mentor Corporation ("Mentor") on behalf of herself and others similarly situated. The putative class includes "all persons or entities in the State of Missouri who were treated, implanted or otherwise received the OBTape, designed, tested, manufactured, distributed and/or sold by Mentor Corporation. *Excluded from the class are all claims for personal injury or wrongful death.*" *Petition* ¶ 17 (emphasis added).

Ms. Ratliff's petition contains nine counts and a single prayer for relief. The nine counts claim relief on the following theories: strict products liability, negligent design, breach of express warranties, breach of implied warranty of fitness for particular purpose, breach of implied warranty of merchantability, violation of the Missouri Merchandising Practices Act,

medical monitoring as an equitable remedy, disgorgement as an equitable remedy, and a declaratory judgment. The prayer for relief, however, clarifies that these nine counts request that the Court do four things: (1) certify a class action, (2) invoke equity to set up a notification, research, and medical monitoring fund, (3) invoke equity to force disgorgement of profits, and (4) enter a declaratory judgment.

The clear intent of Ms. Ratliff's complaint is to spearhead a class action lawsuit against Mentor for all people in Missouri with a UBTape implant. Including personal injury and wrongful death claims in the lawsuit would make class certification more difficult for Ms. Ratliff's product liability claims. *See In re Rezulin Products Liability Litigation,* 210 F.R.D. 61, 65 (S.D.N.Y.2002) ("all relevant Court of Appeals and the bulk of relevant district court decisions have rejected class certification in products liability cases").

Mentor moved to dismiss the entire petition. Mentor argues that all of the relief requested by Ms. Ratliff is premised on the availability of a medical monitoring claim which is not recognized in Missouri outside of the toxic torts context.

## DISCUSSION

■ All of plaintiffs' claims have at least one thing in common—they require proof of injury. Plaintiff's claims specifically exclude "claims for personal injury or wrongful death." Instead, plaintiff intends to establish injury by proving that Mentor should be required to provide a mechanism for her and the other members of the putative class to detect and treat latent injuries resulting from the UBTape. Such claims are commonly referred to as "medical monitoring" claims.

*Meyer v. Fluor Corp.,* 220 S.W.3d 712 (Mo.2007) is the first and only Missouri Supreme Court case dealing with medical monitoring claims. In *Meyer,* children exposed to lead sued smelter operators to recover damages for the expense of medical monitoring. The Missouri Supreme Court held that the children were entitled to recover such damages under a "medical monitoring claim." The *Meyer* court defined a "medical monitoring claim" as a claim that "seeks to recover the costs of future reasonably necessary diagnostic testing to detect latent injuries or diseases that may develop *as a result of exposure to toxic substances." Id.* at 716.

By the Missouri Supreme Court's own definition of a medical monitoring claim, the *Meyer* decision does not apply to potential latent injuries resulting from anything other than exposure to toxic substances. Plaintiff asks this Court to extend *Meyer* to apply to her products liability claim.

In addition to *Meyer,* Ms. Ratliff cites cases from other jurisdictions allegedly permitting medical monitoring claims outside of the toxic tort context. Mentor cites cases from other jurisdictions denying medical monitoring claims outside of the toxic tort context. Mentor also cites a number of cases in which courts have sided with the United States Supreme Court and decided not to allow medical monitoring claims at all. *See Metro–North Commuter Railroad Co. v. Buckley,* 521 U.S. 424, 439–444, 117 S.Ct. 2113, 138 L.Ed.2d 560 (1997) (holding that medical monitoring claims are not allowed under the Federal Employers' Liability Act).

There is a split of authority on whether and to what extent medical monitoring claims are available. The strict holding of *Meyer* is that, in Missouri, medical monitoring claims are available in toxic tort cases. *Meyer* does not support medical monitoring claims in garden variety prod-

ucts liability cases like Ms. Ratliff contends.

 "In the absence of a controlling state decision, a federal court must apply the rule it believes the highest state court would follow." *Tucker v. Paxson Machine Co.*, 645 F.2d 620, 624 (8th Cir.1981). Federal courts should not expand liability in diversity cases if the legal theory is "not well established." *Id.* at 625. *See Trimble v. Asarco, Inc.*, 232 F.3d 946, 963 (8th Cir.2000) (refusing to recognize medical monitoring claim and citing federal cases favoring a narrow interpretation of state laws in diversity cases); *Thompson v. American Tobacco Co., Inc.*, 189 F.R.D. 544, 552 (D.Minn.1999) ("[g]iven the novelty of the tort of medical monitoring and that the Minnesota Supreme Court has yet to recognize it as an independent theory of recovery, this Court is not inclined at this time to find that such a tort exists under Minnesota law").

The Missouri Supreme Court chose its words carefully in *Meyer.* The *Meyer* decision limited "medical monitoring claims" to include only claims "result[ing from] exposure to toxic substances." This explicit limitation in *Meyer* leads this Court to believe that the Missouri Supreme Court would dismiss medical monitoring claims that do not result from exposure to toxic substances. Accordingly, Ms. Ratliff's claims must be dismissed.

## CONCLUSION

The Court **GRANTS** Defendant Mentor Corporation's Motion to Dismiss (# 6). All claims pled in this case are hereby **DISMISSED with prejudice.**

**IT IS SO ORDERED.**