# UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

_____

No. 09-3166

_____

| | | |
|---|---|---|
| Mary Campbell, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Davol, Inc.; C.R. Bard, Inc.; Surgical | * | |
| Sense, Inc.; W.C.O. Medical Products | * | |
| Corporation, | * | |
| | * | |
| Appellees. | * | |

_____

Submitted: June 17, 2010
Filed: September 3, 2010

_____

Before SMITH and HANSEN, Circuit Judges, and WEBBER,[1] District Judge.

_____

WEBBER, District Judge.

Mary Campbell ("Campbell") appeals the district court's[2] grant of summary judgment in favor of Davol, Inc., C.R. Bard, Inc., Surgical Sense, Inc. ("Surgical Sense"), and W.C.O. Medical Products Corporation ("W.C.O. Medical Products").

_____

[1] The Honorable E. Richard Webber, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2] The Honorable Jimm Larry Hendren, Chief Judge, United States District Judge for the Western District of Arkansas.

On appeal, Campbell argues that the district court erred in granting summary judgment in favor of C.R. Bard, Inc. and Davol, Inc. ("Bard/Davol"), because Bard/Davol's purchase of the assets of Surgical Sense amounted to a continuation of Surgical Sense's business. Campbell also argues that the district court erred in determining that Bard/Davol was not liable under a post-sale failure to warn theory of liability. Finally, Campbell asserts that the district court erred in granting summary judgment in favor of Surgical Sense and W.C.O. Medical Products ("SSI/WCO") because SSI/WCO's asset-only sale and ultimate dissolution was merely a fraudulent transfer to avoid liability for a defective product. This court affirms the district court's grant of summary judgment.

## I.

In 1999, Campbell had breast cancer and underwent a right mastectomy. On May 21, 1999, she had breast reconstruction surgery. The surgery involved a TRAM flap procedure, a method by which excess abdominal fat is harvested and fashioned into a prosthetic breast. After the procedure, Campbell's surgeon placed a Kugel Hernia Patch, a polypropylene surgical mesh device used for hernia repair, in her abdomen.

The Kugel Hernia Patch was originally manufactured and distributed by Surgical Sense, which was incorporated under Texas law on March 6, 1996. In January 2000, C.R. Bard, Inc., and its subsidiary Davol, Inc., entered into an Asset Purchase Agreement with Surgical Sense, through which Bard/Davol acquired substantially all of Surgical Sense's assets, including the Kugel line of hernia repair products. The Asset Purchase Agreement provided that Bard/Davol:

> is not assuming and will not perform, any obligations or liabilities not specifically described in Section 1.4 hereof or any of the following obligations and liabilities: . . . any obligation or liability of [Surgical Sense] resulting from any claim, legal or equitable action, proceeding or

investigation pertaining to or relating to or arising from circumstances, events, conditions, acts or omissions occurring or existing on or prior to the Closing Date.

The Asset Purchase Agreement also established that Surgical Sense was retaining all obligations and liabilities that were not expressly assumed by Bard/Davol.

Upon becoming the owner of the Kugel hernia repair product line, Bard/Davol repackaged the remaining inventory of patches, in order to include the Bard name on the packaging. Bard/Davol then began production on its version of the hernia patch, the Bard Kugel Hernia Patch, which was essentially the same as the original Kugel Hernia Patch. Doug Inman and Keith Biggers, the sole directors and officers of Surgical Sense at the time of the asset sale, were temporarily employed by Bard/Davol to ease the product line transition. Several other former Surgical Sense employees were hired by Bard/Davol during the transition period, but most of these employees were sales representatives, and none served in any managerial positions.

Immediately after the asset sale, and pursuant to the Asset Purchase Agreement, Surgical Sense filed Articles of Amendment with the Texas Secretary of State, changing the legal name of the business entity to W.C.O. Medical Products. W.C.O. Medical Products maintained the same corporate officers and directors as Surgical Sense, and at all times, Surgical Sense and W.C.O. Medical Products were the same legal entity. After January of 2000, W.C.O. Medical Products ceased its business operations, and the company limited its activities to paying off liabilities and managing the proceeds of the asset sale. In April of 2002, the Board of Directors of W.C.O. Medical Products voluntarily filed Articles of Dissolution with the Texas Secretary of State, and the company was officially dissolved on April 8, 2002.

According to the allegations set forth in her Complaint, Campbell developed chronic and unexplained abdominal pain at some point after her breast reconstruction surgery. She states that she developed chronic and severe infections in her abdominal

area, which required hospitalizations, surgeries, and months of treatment. Campbell claims that the pain and infections were caused by the malfunction of the Kugel Hernia Patch that was inserted into her abdomen after the surgeon who performed her breast reconstruction surgery completed the TRAM flap procedure.

On July 28, 2006, Campbell filed suit in the Circuit Court of Benton County, Arkansas, and the matter was removed to the United States District Court for the Western District of Arkansas on August 22, 2006. SSI/WCO filed a motion to dismiss, arguing that it is a dissolved entity that lacks the capacity to be sued under Texas law. The district court converted SSI/WCO's motion to dismiss into a motion for summary judgment, and eventually granted summary judgment in favor of SSI/WCO. The district court also granted summary judgment in favor of Bard/Davol, finding that Bard/Davol did not succeed to the liabilities of SSI/WCO, that the continuation of business exception was not applicable, that Arkansas has not recognized a post-sale failure to warn claim, and that the facts do not support a post-sale failure to warn claim. Campbell timely appealed the district court's order.

## II.

"This court reviews a district court's grant of summary judgment *de novo*." *Nelson v. Shuffman*, 603 F.3d 439, 445 (8th Cir. 2010). "Summary judgment is appropriate only when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Minn. Deli Provisions, Inc. v. Boar's Head Provisions Co.*, 606 F.3d 544, 548 (8th Cir. 2010) (citing Fed. R. Civ. P. 56(c)(2)). This court will "view the evidence and inferences that may reasonably be drawn from the evidence in the light most favorable to the nonmovant." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010).

-4-

A.    Successor Liability of Bard/Davol

Campbell first argues that a genuine issue of material fact remains as to whether Bard/Davol succeeded to the liabilities of Surgical Sense, as a result of the asset purchase. The general rule in most states, including Arkansas, is that "a corporation which purchases the assets of another corporation does not succeed to the liabilities of the selling corporation." *Swayze v. A.O. Smith Corp.*, 694 F. Supp. 619, 622 (E.D. Ark. 1988). However, this general rule is subject to several exceptions:

> (1) where the transferee assumes the debts and obligations of the transferor by express or implied agreement; (2) where there is a consolidation or merger of the two corporations; (3) where the transaction is fraudulent or lacking in good faith; and (4) where the purchasing corporation is a mere continuation of the selling corporation.

*Id.* While Campbell recognizes that the first two exceptions are not applicable in this case, she asserts that a genuine issue of material fact exists as to whether the asset purchase in this case lacked good faith, and as to whether Bard/Davol was a mere continuation of Surgical Sense.

As pointed out by Bard/Davol in its Appellees' Brief, and confirmed upon thorough review by this court, Campbell's lack of good faith argument is presented for the first time to this court on appeal. "It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal." *Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976); *see also Pub. Water Supply Dist. No. 3 of Laclede County, Mo. v. City of Lebanon*, 605 F.3d 511, 524 (8th Cir. 2010). Campbell vaguely alleges in her Reply Brief that the lack of good faith argument was "implied" in her arguments to the district court regarding whether Bard/Davol was a mere continuation of Surgical Sense. This court has not seen any evidence that the argument was made at the district court level, and Campbell has not cited to anything in the record suggesting otherwise. More

importantly, the issue was not fully developed in the trial court, and considering the issue on the appellate level would implicate the rationale behind the rule preventing this court from considering new arguments:

> "The rationale for the rule is twofold. First, the record on appeal generally would not contain the findings necessary to an evaluation of the validity of an appellant's arguments. Second, there is an inherent injustice in allowing an appellant to raise an issue for the first time on appeal. A litigant should not be surprised on appeal by a final decision there of issues upon which they had no opportunity to introduce evidence. A contrary rule could encourage a party to 'sandbag' at the district court level, only then to play his 'ace in the hole' before the appellate court."

*Pub. Water Supply Dist.*, 605 F.3d at 524 (quoting *Von Kerssenbrock-Praschma v. Saunders*, 121 F.3d 373, 376 (8th Cir. 1997)). Thus, because Campbell did not argue to the district court that the Asset Purchase Agreement in this case lacked good faith, the court cannot consider the issue on appeal.

Campbell also argues that the "mere continuation" exception to the general rule of successor liability applies in this case. Courts considering this exception "emphasize a common identity of officers, directors, and stock between the selling and purchasing corporations." *Swayze*, 694 F. Supp. at 622-23. There is no evidence of any such overlap in this case. Although Doug Inman and Keith Biggers, the sole directors and officers of Surgical Sense, were temporarily employed by Bard/Davol, the undisputed evidence is that they were consultants, and did not serve in a managerial capacity. The other former Surgical Sense employees who were hired by Bard/Davol after the asset purchase also served in non-managerial positions. Finally, there was no stock transfer involved in Bard/Davol's purchase of Surgical Sense assets.

In addition to the lack of evidence of overlap, the only evidence that Campbell cites in support of her argument that Bard/Davol was a mere continuation of Surgical Sense is insufficient to support a finding in her favor. While Campbell points to the lack of business conducted and the lack of assets held by W.C.O. Medical Products after the Asset Purchase Agreement was executed, common identity of assets is not one of the factors that is considered in determining whether a purchasing corporation is a mere continuation of a selling corporation under Arkansas law, according to *Swayze*. Campbell has not cited any case law suggesting otherwise. Next, Campbell argues that Inman and Biggers were each paid a million dollars by Bard/Davol under their consulting and non-compete agreements, which makes them tantamount to Bard/Davol employees. However, it is not the general overlap of employees that is relevant in determining whether the mere continuation exception applies; rather, it is the common identity of officers and directors between the selling and purchasing corporations with which the court is concerned. Campbell has offered no evidence that Inman and Biggers, the sole directors and officers of Surgical Sense, in any way served as directors or officers of Bard/Davol. Thus, the court finds that the mere continuation exception does not apply.

In addition to arguing that one of the recognized exceptions to the general rule of successor liability applies, Campbell also argues that two non-traditional exceptions, the continuity of enterprise and product line exceptions,[3] apply in this

---

[3]The continuity of enterprise exception is essentially a broader version of the mere continuation exception. *See* Restatement (Third) of Torts: Products Liability § 12 cmt. g (1998). As set forth by the Michigan Supreme Court, the exception applies when:

> (1) There is a continuation of the enterprise of the seller corporation, so that there is a continuity of management, personnel, physical location, assets, and general business operations.
> (2) There is a continuity of shareholders which results from the [p]urchasing corporation paying for the acquired assets with shares of its own stock, this stock ultimately coming to be held by the shareholders

-7-

case. Campbell acknowledges that these non-traditional exceptions have not been adopted in Arkansas, or in most other jurisdictions for that matter, but she argues that they could be applicable in this case.[4]

of the seller corporation so that they become a constituent part of the purchasing corporation.
(3) The seller corporation ceases its ordinary business operations, liquidates, and dissolves as soon as legally and practically possible.
(4) The purchasing corporation assumes those liabilities and obligations of the seller ordinarily necessary for the uninterrupted continuation of normal business operations of the seller corporation.

*Turner v. Bituminous Cas. Co.*, 244 N.W.2d 873, 879 (Mich. 1976) (internal quotations omitted).

By contrast, the product line exception expands the mere continuation exception to specifically include transactions in which a product line that originally belonged to the selling corporation is continued by the purchasing corporation. *See* Restatement, *supra* at cmt. b. As set forth by the California Supreme Court, "a party which acquires a manufacturing business and continues the output of its line of products under the circumstances here presented assumes strict tort liability for defects in units of the same product line previously manufactured and distributed by the entity from which the business was acquired." *Ray v. Alad Corp.*, 560 P.2d 3, 11 (Cal. 1977).

[4]The district court did not address Campbell's arguments based on the non-traditional exceptions. On appeal, Bard/Davol argues that as a result, this court should refuse to consider them on appeal. Bard/Davol is correct that "[i]t is the general rule . . . that a federal appellate court does not consider an issue not passed upon below." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976). However, arguments regarding the non-traditional exceptions were actually presented to the district court, but the court elected not to discuss them. Thus, this court believes it has an obligation to address the non-traditional exceptions. *See Jones v. United States*, 536 F.2d 269, 271 n.4 (8th Cir. 1976) ("The judgment of the district court may be affirmed on 'any ground consistent with the record, even if rejected or ignored in the lower court.'" (quoting *Tiedman v. Chi., Milwaukee, St. Paul & Pac. R.R.*, 513 F.2d 1267, 1272 (8th Cir. 1975))).

"This court is bound by decisions of the highest state court when interpreting state law. If the highest state court has not decided an issue we must attempt to predict how the highest court would resolve the issue, with decisions of intermediate state courts being persuasive authority." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (internal citations omitted). Arkansas courts have not examined either of the non-traditional exceptions that Campbell argues should apply in this case, so this court must predict whether the Arkansas Supreme Court would recognize these exceptions.

As noted by the United States District Court for the Eastern District of Arkansas, "[t]he general rule [of successor liability] and its exceptions have long been a part of Arkansas law." *Swayze*, 694 F. Supp. at 622 (citing *Good v. Ferguson & Wheeler Land, Lumber & Handle Co.*, 153 S.W. 1107 (Ark. 1913)). In the almost one hundred years since Arkansas recognized the general rule and exceptions, there have not been any state cases that called the law into question or that otherwise showed dissatisfaction with the status quo. Thus, it seems likely that, if given the opportunity, the Arkansas Supreme Court would side with the large majority of jurisdictions that have rejected the non-traditional continuity of enterprise and product line exceptions. *See generally*, *Tucker v. Paxson Mach. Co.*, 645 F.2d 620, 626 n.15 (8th Cir. 1981); *Swayze*, 694 F. Supp. at 623-24; *Reed v. Armstrong Cork Co.*, 577 F. Supp. 246, 248 (E.D. Ark. 1983). Accordingly, this court finds that Campbell cannot rely on the non-traditional exceptions to establish that Bard/Davol succeeded to the liabilities of Surgical Sense, and the district court did not err in granting summary judgment in favor of Bard/Davol with respect to the issue of successor liability.

B.      Liability of Bard/Davol Under the Post-Sale Failure to Warn Theory

Next, Campbell argues that a genuine issue of material fact remains as to whether Bard/Davol is liable under a post-sale failure to warn theory. The district court granted summary judgment in favor of Bard/Davol with respect to Campbell's post-sale failure to warn claim, reasoning that Arkansas has not adopted this theory

of liability, and there is no evidence of any intent to do so. The district court also noted that Campbell's claim would fail on the merits, even if the theory of liability were adopted by Arkansas law.

The post-sale failure to warn theory of liability for successors, as set forth by the Restatement (Third) of Torts, provides:

> (a) A successor corporation or other business entity that acquires assets of a predecessor corporation or other business entity . . . is subject to liability for harm to persons or property caused by the successor's failure to warn of a risk created by a product sold or distributed by the predecessor if:
> > (1) the successor undertakes or agrees to provide services for maintenance or repair of the product or enters into a similar relationship with purchasers of the predecessor's products giving rise to actual or potential economic advantage to the successor, and
> > (2) a reasonable person in the position of the successor would provide a warning.
>
> (b) A reasonable person in the position of the successor would provide a warning if:
> > (1) the successor knows or reasonably should know that the product poses a substantial risk of harm to persons or property; and
> > (2) those to whom a warning might be provided can be identified and can reasonably be assumed to be unaware of the risk of harm; and
> > (3) a warning can be effectively communicated to and acted on by those to whom a warning might be provided; and
> > (4) the risk of harm is sufficiently great to justify the burden of providing a warning.

Restatement (Third) of Torts: Products Liability § 13 (1998). It is undisputed that Arkansas law has not adopted this theory of liability. Generally, it would be the duty

of this court to predict whether the Arkansas Supreme Court would recognize the post-sale failure to warn theory of liability.  *See Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010).  However, the court need not engage in such speculation because the facts of this case do not support the application of the theory.

Campbell has not set forth any facts creating a genuine issue of material fact as to whether Bard/Davol agreed to provide services for the maintenance or repair of the Kugel Hernia Patches that were sold by Surgical Sense, prior to the execution of the Asset Purchase Agreement.[5]  The facts presented to the district court demonstrated that there was no contractual relationship to provide services whatsoever between Bard/Davol and the customers who purchased Kugel Hernia Patches from Surgical Sense.  "The crucial element necessary to establish a duty to warn is the 'continuation of the relationship between the successor and the customers of the predecessor.'" *Tucker v. Paxson Mach. Co.*, 645 F.2d 620, 626 (8th Cir. 1981) (quoting *Gee v. Tenneco, Inc.*, 615 F.2d 857, 866 (9th Cir. 1980)).  Because Campbell has not set forth or alleged any facts demonstrating a contractual relationship to provide services between Bard/Davol and Surgical Sense's customers, she cannot establish a cause of action against Bard/Davol for post-sale failure to warn, regardless of whether the tort is recognized by Arkansas law.

Accordingly, the district court did not err in granting summary judgment in favor of Bard/Davol on Campbell's post-sale failure to warn claim.

_____

[5]On appeal, Campbell asserts that Bard/Davol purchased customer lists from Surgical Sense, as part of the Asset Purchase Agreement.  Assuming that this assertion is true, the purchase of customer lists would only be evidence that Bard/Davol had the ability to identify who bought Kugel Hernia Patches from Surgical Sense prior to the asset purchase.  It does not establish a relationship of any sort between Bard/Davol and the customers of Surgical Sense.

C.     Liability of SSI/WCO Due to Fraudulent Dissolution

In addition to granting summary judgment in favor of Bard/Davol, the district court also granted summary judgment in favor of SSI/WCO.  The district court found that Campbell's claims against SSI/WCO were barred because, under Texas law,[6] a dissolved corporation can only be held liable for claims brought within three years of the dissolution.  Campbell sued SSI/WCO more than four years after its dissolution.

The only argument that Campbell makes on appeal with respect to the district court's grant of summary judgment in favor of SSI/WCO is that there is a genuine issue of material fact as to whether the asset sale and subsequent dissolution of SSI/WCO was merely a fraudulent transfer to avoid liability for a defective patch.  Campbell argues on appeal that because SSI/WCO's dissolution was fraudulent, it should be revoked.  This is the first time that Campbell has made any argument regarding the validity of SSI/WCO's dissolution.  As discussed above, this court cannot consider issues that were not raised in the district court.  *See Morrow v. Greyhound Lines, Inc.*, 541 F.2d 713, 724 (8th Cir. 1976) ("It is old and well-settled law that issues not raised in the trial court cannot be considered by this court as a basis for reversal.").  Campbell asserts in her Reply Brief that the argument was properly presented to the district court.  However, this court thoroughly reviewed the record and has not seen any evidence, nor has Campbell actually cited to any, that the argument was made at the district court level.

---

[6]The district court applied Texas law to this inquiry based on Federal Rule of Civil Procedure 17(b)(2), which provides: "Capacity to sue or be sued is determined as follows: . . . for a corporation, by the law under which it was organized."  Surgical Sense was incorporated under Texas law, and the legal name of the entity was changed to W.C.O. Medical Products upon application to the Texas Secretary of State.

Accordingly, the district court did not err in granting summary judgment in favor of SSI/WCO.

## III.

For these reasons, the judgment of the district court is affirmed.